JONATHAN E. LEVITT (JEL-3881)
MICHELLE L. GREENBERG (MG-3047)
JASON N. SILBERBERG (JNS-6611)
FRIER & LEVITT, LLC
84 Bloomfield Avenue
Pine Brook, NJ 07058
(973) 618-1660
**Attorneys for Defendant**
**Neonatal Associates, LLC**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS A. RODRIGUEZ-OCASIO and JOYCE R. LINIS-MOREL, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LAW OFFICES OF JOSEPH A. MOLINARO, LLC; JOSEPH A. MOLINARO; NEONATAL ASSOCIATES, LLC; and JOHN DOES 1 TO 10,<br><br>Defendants. | Civil Action No. 2:17-cv-11926-SDW-SCM<br><br><br>**RETURN DATE:  January 16, 2018**<br><br>**ORAL ARGUMENT REQUESTED** |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION

### TO DISMISS PLAINTIFFS' COMPLAINT IN LIEU OF ANSWER

On the Brief:

    Michelle L. Greenberg, Esq.
    Jason N. Silberberg, Esq.

## **<u>TABLE OF CONTENTS</u>**

PAGE

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT...............................................................................................1

STATEMENT OF FACTS ........................................................................................................3

LEGAL ARGUMENT................................................................................................................5

      POINT ONE ...................................................................................................................5

      POINT TWO ..................................................................................................................6

CONCLUSION ..........................................................................................................................23

## TABLE OF AUTHORITIES

# CASES

American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1436 (3d Cir. 1994)..............7

Asha Enterprises, LLC, 422 N.J. Super. at 149.................................................................................................17

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) ........................................................................5, 8

Atlantic Ambulance Corporation v. Cullum, 451 N.J. Super. 247, 266-67 (App. Div. 2017)............................16

Baldasarre v. Butler, 132 N.J. 278, 292 (1993)...................................................................................................7

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-59 (2007) ........................................................................5, 8

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) ...............................................................................5

Billings v. American Exp. Co., 2011 WL 5599648, at *9 (D.N.J. 2011) .............................................................17

Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982).........................................................19

Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)..............................................................................17

Broem v. Lomazow, 227 N.J. Super. 288 (App. Div. 1988)...............................................................................21

Castro v. NYT Television, 384 N.J. Super. 601, 608-09 (App. Div. 2006) ........................................................19

Cole v. Laughrey Funeral Home, 376 N.J. Super. 135, 144-45 (App. Div. 2005)............................................17

Conley v. Gibson, 355 U.S. 41, 47 (1957) ..........................................................................................................14

Connelly v. Lane Const. Corp., 809 F.3d 780 (3d Cir. 2016) .............................................................................8

DeHart v. U.S. Bank, N.A. ND, 811 F.Supp.2d 1038, 1046 (D.N.J. 2011)........................................................17

DiCarlo v. St. Mary's Hosp., 530 F.3d 255, 268-69 (3d Cir. 2008)...................................................................16

Dolphin v. Bank of America Mortg. Co., 641 Fed.Appx. 131, 134 (3d Cir. 2016) ...........................................19

Dunne v. Township of Springfield, 500 Fed.Appx. 136 (3d Cir. 2012)...............................................................21

Estate of Behringer v. Medical Center at Princeton, 249 N.J. Super. 597, 632 (Law. Div. 1991).....................9

Fernandes v. Deutsche Bank National Trust Company, 157 F.Supp.3d 383, FN6 (D.N.J. 2015) ......................17

G.D. v. Kenny, 205 N.J. 275, 309 (2011) ...........................................................................................................18

Gennari v. Weichert Co. Realtors, 148 N.J. 582, 612-13 (1997).......................................................................19

Gupta v. Asha Enterprises, L.L.C., 422 N.J. Super. 136, 147 (App. Div. 2011)................................................16

Hampton Hosp. v. Bresan, 288 N.J. Super. 372, 383 (App. Div.1980)..............................................................15

Hassoun v. Cimmino, 126 F.Supp.2d 353, 370 (D.N.J. 2000) ...........................................................................17

Hutchinson v. Delaware Sav. Bank FSB, 410 F.Supp.2d 374, 386 (D.N.J.) ......................................................17

In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262, 292 (3d Cir. 2016) ........................................19

In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002)..............................................10

King's Choice Neckwear, Inc. v. Fedex Corp., 2007 WL 4554220, at *5 (D.N.J. 2007).....................................7

Laughrey Funeral Home, 376 N.J. Super. 135 .................................................................................................17

LoBlondo v. Schwartz, 199 N.J. 62, 90 (2009)................................................................................................21, 22

McNemar v. Disney Store, Inc., 91 F.3d 610, 622 (3d Cir. 1996).......................................................................9

Manahawkin Convalescent v. O'Neil, 426 N.J. Super. 143, 155-56 (App. Div. 2012)......................................16

McDermott v. Clondalkin Group, Inc., 649 Fed.Appx. 263, 268 (3d Cir. 2016)...........................................10, 11

Michelson v. Wyatt, 379 N.J. Super. 611, 623 (App. Div. 2005) ..................................................................3, 12

Neonatal Associates, LLC v. Linis, et al., Dkt. No.: PAS-DC-7057-16............................................................3, 23

Neveroski v. Blair, 141 N.J. Super. 365, 379 (1976).........................................................................................15

Penwag Property Co., Inc. v. Landau, 76 N.J. 595, 598 (1978).........................................................................21

Phillips v. County of Allegheny, 515 F.3d 224,231 (3d Cir. 2008)...................................................................5, 14

Piccinetti v. Clayton, Myrick, McClanahan & Coulter, PLLC, 2017 WL 3879085, at *4 (D.N.J. 2017)...........10

Pinker v. Roche Holdings Ltd., 292 F3d. 361,374, n.7 (3d Cir. 2002)................................................................5

Plemmons v. Blue Chip Ins. Servs, Inc., 387 N.J. Super. 551, 556 (App. Div. 2006).........................................16

Romaine v. Kallinger, 109 N.J. 282, 292 (1988)................................................................................................19

Rumbauskas v. Cantor, 138 N.J. 173, 180 (1994)..............................................................................................18

Sears Mortg. Corp. v. Rose, 134 N.J. 326, 341-46 (1993)..................................................................................7

Skeens v. Shetter, 2006 WL 827782, at* 8 (D.N.J. 2006)...................................................................................21

*Stempler v. Speidell*, 100 N.J. 368 (1985) ......................................................................................9

*Turner v. Wong*, 363 N.J. Super. 186, 203 (App. Div. 2003) ..............................................21, 22

*Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C.*, 11 F.3d 385, 389 (3d Cir. 1993) .....................................22

*Vort v. Hollander*, 257 N.J. Super. 56, 62 (App. Div.1992)..............................................16

*Watt v. Winston & Strawn, LLP*, 2011 WL 2559567, at *8 (D.N.J. 2011)..............................11

## STATUTES

N.J.S.A. 56:8-19...............................................................................................................passim

## OTHER AUTHORITIES

New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et.seq...............................................1, 5, 22

Prosser and Keeton on the Law of Torts § 117...............................................................19

## RULES

F.R.C.P. 5.2(e) .................................................................................................................20

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 5

New Jersey Court Rule 4:10-3...........................................................................................20

## TREATISES

5 Wright & Miller, Federal Practice and Procedure §1216, at 235-236 (3rd ed. 2004) ................5

## PRELIMINARY STATEMENT

This is Defendant's, Neonatal Associates, LLC, (hereinafter "Neonatal"), motion to dismiss Plaintiffs' complaint in lieu of filing an answer pursuant to Fed. R. Civ. P. 12(b)(6). First and foremost, Neonatal denies all of the allegations and causes of action Plaintiffs filed against it. However, even assuming the allegations were true, it is evident at this early stage of litigation that Plaintiffs have not set forth viable claims against Neonatal for breach of doctor-patient privilege (Count I), violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et.seq. ("CFA") (Count II), breach of duty of care (Count III), invasion of privacy (Count V) and/or malicious use or process or abuse of process (Count VI) and therefore the Complaint should be dismissed against Neonatal.

This case stems from the attempt to collect payment for medical services Neonatal provided to Plaintiff Joyce R. Linis-Morel. Ms. Linis-Morel and her partner/spouse, Luis A. Rodriguez-Ocasio, allege that Neonatal and the Law Office of Joseph A. Molinaro/Joseph A. Molinaro, Esq. (hereinafter "Debt Collector Defendants") intentionally disclosed "private and sensitive medical information" in a court filing in an effort to obtain money from "consumers" in an improper manner. The alleged improper disclosure took place when the Debt Collector Defendants attached to a pleading filed in Special Civil Court a bill for medical services (hereinafter "Bill"). The Bill included: (a) the Plaintiffs' names; (b) the patient's name; (c) the date of service; (d) the Current Procedural Terminology (CPT) code for the service provided; (e) a brief description of the service; (f) and the fee for same. Plaintiffs assert that this disclosure amounts to "abusive and unconscionable behavior" for which they seek money damages. Most notably, the "highly confidential" medical services that Plaintiffs assert was improperly disclosed is the same information that Plaintiffs celebrated and boasted about to the public by way of their social media accounts, including Facebook. Despite Plaintiffs' own disclosure of this information on social

media, Plaintiffs now claim that that they have and will continue to suffer "extraordinary worry, anxiety, fear, upset and distress" from the alleged improper disclosure of highly confidential information.

Plaintiffs' claims are legally deficient and do not set forth viable causes of action capable of withstanding a motion to dismiss. The Court should not permit Plaintiffs to drag Neonatal through a lawsuit that is not meritorious, does not satisfy or even plead elements necessary to make viable claims, and may even rise to the level of frivolous based on Plaintiffs' own disclosure on social media of the very information that Plaintiffs' claim Neonatal improperly disclosed.

## STATEMENT OF FACTS

Neonatal is a New Jersey medical group. Defendant Joseph A. Molinaro, Esq. is the principal attorney and managing member of Law Offices of Joseph A. Molinaro, LLC. Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), "covered entities" (physicians or medical practices) such as Neonatal, are permitted to disclose "protected health information" to "business associates," such as law firms for payment and collections purposes. See 45 C.F.R. 160.103; § 164.502(e)(1). Plaintiffs allege that Neonatal retained the services of the foregoing Debt Collector Defendants for purposes of pursuing collection of unpaid balances owed by patients to Neonatal, a perfectly lawful arrangement under HIPAA, the principal federal statute governing the disclosure of patient health information/records. See Michelson v. Wyatt, 379 N.J. Super. 611, 623 (App. Div. 2005).

Neonatal rendered medical services in connection with "one or more transactions [concerning] . . . Plaintiffs' [Luis A. Rodriguez-Ocasio and Joyce R. Linis-Morel,] personal, family or household purposes." Complaint at ¶4-5, 22. Per the Complaint (including Plaintiffs' express incorporation of the Collection Action), Plaintiffs did not pay Neonatal some or all of the monies owed in exchange for said services.

The Debt Collector Defendants filed a complaint against Plaintiffs in the Superior Court of New Jersey, Special Civil Part, Passaic County, captioned Neonatal Associates, LLC v. Linis, et al., Dkt. No.: PAS-DC-7057-16 ("Collection Action"). Notably, Plaintiffs expressly "incorporate[] and adopt[] by reference the entire record in the Collection Action" but do not specifically reference the medical procedure involved. Complaint at ¶26. As noted by Plaintiffs, the Collection Action is "public record [and] available for anyone to assess." Complaint at ¶29. Per the public record, a judgment was secured against the Plaintiffs in the case.

In connection with the Collection Action and in order to maintain the claim against Plaintiffs, the Debt Collector Defendants filed a document titled "Certification of Proof and Nonmilitary Service" on or about October 3, 2016. Included with the Certification was a copy of a statement for services rendered (i.e., the aforementioned "Bill"), which, according to the Complaint's allegations, was prepared by Neonatal. See Complaint at ¶28. In accordance with HIPAA, the Bill contains only the "minimum necessary" amount of information to pursue payment for services rendered by way of a collections action. See 45 C.F.R. 164.502(b); §164.501. Specifically, the Certification contained only a CPT code describing the services rendered, the patient name and the amount outstanding. See Certification of Nonmilitary Service (incorporated by reference into the Complaint). Notably, none of the publicly available documents for the Collections Action contains the signature, certification or affidavit of any Neonatal owner or employee. See Collection Action.

On or about October 18, 2017, Plaintiffs filed the instant action in New Jersey Superior Court (Bergen County, Law Division). It is noteworthy that, although the Complaint purports to sue Defendants for the alleged unlawful disclosure of protected health information, Plaintiffs chose not to file under seal and, instead, not only filed this suit such that it became publicly available but, by incorporating the Collection Action, advertised the existence and accessibility of the same to persons/entities who might not otherwise have had knowledge of it.

On or about November 21, 2017, Debt Collector Defendants removed this action from New Jersey Superior Court to the District of New Jersey.

On or about November 30, 2017, Debt Collector Defendants filed an Answer to the Complaint.

## LEGAL ARGUMENT

## POINT ONE

### A. Standard of Law on Motion to Dismiss

In deciding Neonatal's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224,231 (3d Cir. 2008), quoting Pinker v. Roche Holdings Ltd., 292 F.3d. 361,374, n.7 (3d Cir. 2002). Despite a liberal reading of Plaintiffs' complaint, dismissal is warranted because Plaintiffs cannot satisfy the elements required for relief under breach of doctor-patient privilege (Count I), violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et.seq. (Count II), breach of duty of care (Count III), invasion of privacy (Count V) and/or malicious use or process or abuse of process (Count VI).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 662, citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Twombly, 550 U.S. at 555, quoting 5 Wright & Miller, Federal Practice and Procedure §1216, at 235-236 (3rd ed. 2004). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitle[ment] to relief.'" Iqbal, 556 U.S. 662, quoting Twombly, 550 U.S. at 557.

In determining the whether a claim meets the "facial plausibility" requirement, the Court must engage in a two-pronged analysis. Iqbal, Id. The first prong requires the Court to determine which allegations are entitled to a presumption of truth, bearing in mind that mere legal conclusions are not to be presumed true. Id. at 1949-51 (finding that the plaintiffs' allegations amounted to "nothing more than a 'formulaic recitation of the elements' of a ... claim" and were not entitled to a presumption of truth). The second prong requires the Court to determine whether well-pleaded facts, if presumed to be true, constitute "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1951-52 (plaintiff must allege sufficient facts to "nudg[e] his claim ... across the line from conceivable to plausible"), quoting Twombly, 550 U.S. at 570.

Reviewing Plaintiffs' complaint under this two-prong analysis, and accepting all of Plaintiffs' allegations as true, Plaintiffs fail to satisfy the two-prong analysis and do not state a claim for relief against Defendant Neonatal as to any of the Counts applicable to it, i.e., Counts One, Two, Three, Five and Six.

## POINT TWO

I.   **Counts One and Three Should Be Dismissed Because an Innocent Client Cannot Be Held Vicariously Liable for the Wrongful Conduct of Its Attorney, Because The Counts Are Not "Well-Pleaded" and Because Neonatal Was Legally Permitted to Disclose the Bill to Counsel for Collections Purposes.**

Counts One (Breach of Doctor-Patient Privilege) and Three (Breach of Duty of Care) fail as a matter of law because even assuming, arguendo, that Neonatal did provide the Bill to the Debt Collector Defendants and that the Debt Collector Defendants did unlawfully disclose it during the course of the Collection Action, an innocent client cannot be held vicariously liable for the wrongful conduct of his attorney where he did not direct, authorize or consent to such conduct. Moreover, while it is true that Plaintiffs assert, "[o]n information and belief," that Neonatal did so authorize the Debt Collector Defendants, this assertion, a necessary precondition to finding liability

6

under these Counts, does not pass muster under the "well-pleaded complaint" standard of

Twombly and Iqbal, as it is nothing more than a fact-free, conclusory "legal point." Counts One

and Three also fail as a matter of law because assuming, arguendo, that Neonatal had disclosed the

Bill to the Debt Collector Defendants, it would have been legally permitted to do so, as the law

firm plainly qualified as a "business associate" under HIPAA and the document in question

included only the "minimum necessary" personally identifiable health information to carry out

Neonatal's collections obligations, which is expressly permitted by HIPAA. See 45 C.F.R. 160.103

and 45 C.F.R. 164.502(b).

### A. Alleged Misconduct by Debt Collector Defendants Cannot Be Imputed to Neonatal as a Matter of Law

To begin with, it is well-settled New Jersey law that "[a]n innocent client should not be held

vicariously liable for the wrongful conduct of his or her attorney . . . if the client does not direct,

advise, consent to, or participate in the attorney's improper conduct." Baldasarre v. Butler, 132

N.J. 278, 292 (1993); see also Baglini v. Lauletta, 338 N.J. Super. 282, 307-08 (App. Div. 2001);

American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1436 (3d Cir.

1994) (applying Baldasarre's "innocent client" rule in reaching the holding that "sales

representative" were, like the attorney in Baldasarre, "independent contractors.").[1]  As noted by the

---

[1] There are exceptional circumstances in which New Jersey courts have found otherwise, but this limited subset of cases has fact patterns entirely inapposite to the facts set forth in the Complaint. See Sears Mortg. Corp. v. Rose, 134 N.J. 326, 341-46 (1993) (finding title insurance company responsible for its "approved attorney's" theft of insureds' funds after conducting an analysis to determine whether a "master-servant" relationship existed between those parties). Moreover, this Court has implicitly recognized that within the context of debt collection, the principles of Baldasarre and not Sears apply, such that the misconduct of debt collectors, if unauthorized by their principals, will not be imputed to the creditors who have retained them. See King's Choice Neckwear, Inc. v. Fedex Corp., 2007 WL 4554220, at *5 (D.N.J. 2007) (finding that the misconduct by a debt collection entity, which had its own "in-house" law firm, was not imputable to FedEx, its client, because the entity "work[ed] for different clients . . . FedEx pa[id] [the entity] only for the work performed . . . [the entity's] work d[id] not comprise the regular course of business for FedEx; collection serves [we]re convenient but, unnecessary to provide shipping services [and because] . . . FedEx exercise[d] minimal control over AFG and that control relate[d] directly to the results sought, rather than the means employed to achieve those results.").

Third Circuit in <u>American Tel</u>, this principle is a function of an agency law "master-servant" analysis. <u>Id.</u> at 1436-37. Applying this agency law analysis to a debt collection entity in <u>King's Choice Neckwear</u>, this Court found that misconduct committed by the entity in connection with its debt collection efforts was not imputable to the creditor that had retained it. <u>King's Choice Neckwear, Inc. v. Fedex Corp.</u>, 2007 <u>WL</u> 4554220, at \*5 (D.N.J. 2007). Here, assuming the truth of the allegations in the Complaint, the filing of the Certification containing the Bill, allegedly illegal, was performed by the Debt Collector Defendants – not Neonatal.  <u>See</u> <u>Complaint</u> at ¶20-21, 27-28; <u>see</u> <u>also</u> <u>Certification of Proof of Nonmilitary Service</u> (a document filed by the Debt Collector Defendants, and which does not contain the signature of anyone from Neonatal).  Moreover, the one allegation pleaded implying that Neonatal had authorized the Debt Collector Defendants to file the Bill is entirely conclusory and should not be afforded a presumption of truth for reasons more fully discussed in Section B, below. The above precedent dictates, therefore, that the alleged illegal filing of the Certification by the Debt Collector Defendants cannot be imputed to Neonatal as a matter of law. For this reason, Counts One and Three fail and should be dismissed.

### B. Counts One and Three Fail to Meet the "Well-Pleaded Complaint" Rule

While it is true that in Paragraph 30, Plaintiffs allege, "[o]n information and belief" that "Neonatal voluntarily gave Plaintiffs' highly confidential and legally protected health information to the Debt Collector Defendants . . . to use . . . for the improper and unlawful purpose of gaining leverage in connection with their attempt to collect a debt[,]" this allegation and, by extension, Counts One and Three in their entirety, fail to satisfy the "well-pleaded complaint" rule.  As such, Counts One and Three must be dismissed.  <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 <u>U.S.</u> 544, 555-59 (2007) (failure to sufficiently allege facts to plausibly support claim asserted violates <u>F.R.C.P.</u> 8(a)(2)'s pleading requirements and warrants dismissal); <u>Ashcroft v. Iqbal</u>, 556 <u>U.S.</u> 662, 678 (2009).

In <u>Connelly v. Lane Const. Corp.</u>, 809 <u>F.3d</u> 780 (3d Cir. 2016), the Third Circuit succinctly laid out the steps to be taken when determining whether a given claim/allegation satisfies the well-pleaded complaint rule:

> Under the pleading regime established by <u>Twombly</u> and <u>Iqbal</u>, a court reviewing the sufficiency of a complaint must take three steps.  'First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'
>
> [<u>Id.</u> at 787 (internal citations omitted).]

Applying the above framework to the allegations made in Paragraph 30 and Count One/Three more generally,[2] it is plain that neither qualify as "well-pleaded." First, the elements Plaintiffs must plead to state a claim for breach of doctor-patient confidentiality are the following: (1) that a bona fide doctor-patient relationship existed and that (2) "***the physician [failed]*** to maintain the confidentiality of [that] patient's communications." <u>Estate of Behringer v. Medical Center at Princeton</u>, 249 <u>N.J. Super.</u> 597, 632 (Law. Div. 1991) (emphasis supplied) (<u>citing Stempler v. Speidell</u>, 100 <u>N.J.</u> 368 (1985)). Critically, it is the ***physician*** that must fail to maintain the confidentiality of the patient's communications for the claim to be actionable – it does not extend to third-parties, such as attorneys, who wrongfully disclose without the physician's authorization.

---

[2] Counts One and Three are, by all appearances, the same claim couched in different terms. Count One asserts that Neonatal "breached the doctor-patient privilege and their duty of confidentiality owed Plaintiffs" by "providing Plaintiffs' confidential and legally protected health information[.]" <u>Complaint</u> at ¶42-43. Count Three asserts that "[a]s their patient the Neonatal owed Plaintiffs a duty of care. Based on the conduct alleged in this Complaint, breached that duty of care." <u>Complaint</u> at ¶54-55. As the duty of confidentiality is the only one discussed in the Complaint, <u>see</u>, <u>generally</u>, <u>id.</u>, we presume that Plaintiffs are referring to it in Count Three and, as such, the arguments for dismissing Count One apply with equal force to Count Three. That Neonatal is forced to make such presumptions at all, however, raises alternative and independently sufficient grounds on which to move to dismiss Count Three, namely, that it is not well-pleaded and that it has patently failed to state a claim on which relief can be granted, in that it has failed to articulate an element essential to any claim alleging breach of duty – an identification of the duty breached. <u>See</u> <u>F.R.C.P.</u> 12(b)(6); <u>Twombly</u>, 550 <u>U.S.</u> at 555-59. These alternative grounds for relief are discussed more fully in Point 2, § II of the brief, <u>infra</u>.

See, discussion concerning issue of vicarious liability for wrongful acts by counsel, supra at Point 2, § I.A. The elements of the claim having been noted, Connelly next instructs us to identify those allegations relevant to the claim that, because they are no more than mere conclusions, are not entitled to a presumption of truth. Id. at 787. *In the entire Complaint, there is only one sentence that alleges that Neonatal knowingly, intentionally and wrongfully authorized the Debt Collector Defendants to disclose the Bill as part of the Debt Collection Action, which sentence is located at Paragraph 30 of the Complaint.* Paragraph 30 provides:

> On information and belief, the Neonatal voluntarily gave Plaintiffs' highly confidential and legally protected health information to the Debt Collector Defendants without having any legal basis for doing so but, instead, for the intentional purpose of allowing the Debt Collector Defendants to use that protected health information for the improper and unlawful purpose of gaining leverage in connection with their attempt to collect a debt.
>
> [Id.]

In evaluating whether an allegation is "merely conclusory" and therefore not entitled to a presumption of truth, courts must "distinguish between [those allegations that are] legal conclusions, which are discounted in the analysis, and allegations of historical fact, which are assumed to be true . . ." Connelly, 809 F.3d at 789. Moreover, "'some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the faction,' *but the clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of the complaint is that it embodies a legal point.*" Id. at 789-90 (emphasis supplied) (citations omitted). Stated another way, allegations that are conclusory are those that are "*merely legal conclusions couched as factual allegations.*" McDermott v. Clondalkin Group, Inc., 649 Fed.Appx. 263, 268 (3d Cir. 2016) (emphasis supplied). Additionally, the Third Circuit has held that allegations pleaded on information and belief, such as Paragraph 30, are permissible only where "it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control – [and only]

so long as there are *no boilerplate and conclusory allegations and plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible.*" Id. at 268-69 (emphasis in original) (internal quotations and ellipses omitted) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002); see also Piccinetti v. Clayton, Myrick, McClanahan & Coulter, PLLC, 2017 WL 3879085, at *4 (D.N.J. 2017).

Here, Paragraph 30 contains *zero* factual specificity and, instead, quite clearly reads like a "point of law" – linking the alleged misconduct of the Debt Collector Defendants with Neonatal, which Plaintiffs evidently realized they must do as a matter of law, and did so in a detail-free, utterly conclusory fashion. Further, it is pleaded "[o]n information and belief[.]" While, in theory, Neonatal's knowledge of whether it authorized the Debt Collector Defendants to file the Bill would be peculiarly within its own possession, this is immaterial in light of the "boilerplate and conclusory" nature of the allegation, included purely to "make their theoretically viable claim plausible." McDermott, 649 Fed.Appx. at 268-69. In light of the foregoing, Paragraph 30 must not be afforded a presumption of truth. And, if it is not, Counts One and Three necessarily fall apart as a matter of law – because if Neonatal did not "voluntarily" give Plaintiffs' health information to the Debt Collector Defendants "to use . . . for the improper and unlawful purpose of gaining leverage in connection with their attempt to collect a debt[,]" liability can rest only with the Debt Collector Defendants themselves, i.e., there can be no finding of agency or vicarious liability on the part of Neonatal. Further to this point, this Court has held that the plaintiff generally has "the burden of alleging[] '(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of its employment.'" DeHart v. U.S. Bank, N.A. ND, 811 F.Supp.2d 1038, 1046 (D.N.J. 2011) (quoting Watt v. Winston & Strawn, LLP, 2011 WL 2559567, at *8 (D.N.J. 2011). Plainly, if Paragraph 30 is not entitled to a presumption of truth, Plaintiffs could not

have met this burden. In short, Counts One and Three fail to meet the well-pleaded complaint rule and should be dismissed accordingly.

### C. Assuming Truth of Facts Asserted, Neonatal Was Legally Permitted to Disclose the Bill to Its Legal Counsel Pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA)

In Count One/Three,[3] Plaintiffs allege that "[b]y providing Plaintiffs' confidential and legally protected health information in the first instance to the Debt Collector Defendants, the Neonatal breached the doctor-patient privilege and their duty of confidentiality owed to Plaintiffs." Complaint at ¶42. Even assuming the truth of the foregoing allegation, this claim fails as a matter of law because such disclosure would have been expressly permitted by HIPAA. "'The HIPAA privacy restrictions govern . . . covered entities and their business associates.'" In re JR, 2015 WL 10352744, at *7 (App. Div. 2016) (quoting Michelson v. Wyatt, 379 N.J. Super. 611, 623 (App. Div. 2005)). There are three categories of "covered entities," among which are "health care providers," which category includes physicians. See 45 C.F.R. 160.103 ("Health care provider" means, among other things, a provider of "medical or other health services"). "Business associates" include, among other entities/individuals, a person that "[p]rovides, other than in the capacity of a member of the workforce of such covered entity, *legal*, actuarial, accounting, consulting, data aggregation . . . management, administrative . . . or financial services for such covered entity . . . *where the provision of the service involves the disclosure of protected health information from such covered entity* . . ." 45 C.F.R. 160.103 (emphasis supplied). Covered entities may disclose protected health information to a business associate. 45 C.F.R. 164.502(e)(1). Furthermore, HIPAA permits covered entities and business associates to disclose protected health information for "treatment, *payment*, or health care operations[,] 45 C.F.R. 164.502 (emphasis supplied), § 506, so long as the covered entity has made "reasonable efforts to limit the protected health information

---

[3] See discussion at FN2, supra.

[disclosed] to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 45 C.F.R. 164.502(b). "Payment" is defined to include "[b]illing, claims management, [and] *collection activities* . . ." 45 C.F.R. 164.501 (emphasis supplied).

Here, per the facts alleged in the Complaint, the Debt Collector Defendants qualified as business associates of Neonatal, in that they were not members of the Neonatal workforce but provided legal services to Neonatal. See Complaint at ¶7-10, 21. Thus, disclosure of protected health information by Neonatal to the Debt Collector Defendants was permitted under 45 C.F.R. 164.502(e)(1), and the initial alleged disclosure was therefore perfectly lawful. Additionally, assuming, arguendo, that Neonatal did disclose the Bill to the Debt Collector Defendants, it did so to accomplish the "intended purpose" of securing "[p]ayment" through a "collections" action, which activity is expressly permitted by 45 C.F.R. 164.502 and §501. Moreover, the Bill contained only the patient's name, the CPT code for the service rendered and the amount outstanding. See Certification of Proof of Nonmilitary Service (incorporated by reference into Plaintiffs' Complaint). Had Neonatal included any less information, collections would not have been possible. In other words, Neonatal included only the "minimum necessary" amount of personal health information to effectuate collections, as required by 164.502(b). In sum, per the allegations in the Complaint, Neonatal fell within two independently sufficient exceptions to the HIPAA disclosure bar – the "business associate" exception and the "treatment, payment or health care operations" exception. Neonatal's alleged disclosure of the Bill to the Debt Collector Defendants therefore could not have, as a matter of law, violated applicable physician-patient privacy protections. As such, no breach could have occurred and Counts One/Three fail.

For the foregoing reasons, Neonatal respectfully requests that Counts One and Three be dismissed in full.

**II.** **Count Three Must Be Dismissed Because It Does Not Articulate the Duty of Care Allegedly Breached, Nor Does It Specify the Facts Relevant to the Same.**

Count Three alleges that Neonatal breached its duty of care to Plaintiffs without defining what that duty is. Specifically, Count Three alleges the following:

> Plaintiffs were Neonatal's patient. As their patient, the Neonatal owed Plaintiffs a duty of care. Based on the conduct alleged in this Complaint, Neonatal breached that duty of care.

[Complaint at ¶52 – 55]

Presumably, Plaintiffs refer to Neonatal's duty of confidentiality to its patients – but it is not Neonatal's obligation to make such presumptions; it is Plaintiffs' obligation to draft a coherent and complete Count. As discussed in Twombly, F.R.C.P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' *in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"* Id. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (emphasis supplied); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) ("in light of Twombly, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Failure to name the duty allegedly breached cannot possibly meet this standard, as it puts the onus on the defendants to guess or, worse, invent the violations of law with which they have been charged. Moreover, failure to name a baseline element of a claim is, quite literally, a failure "to state a claim upon which relief can be granted[.]" F.R.C.P. 12(b)(6). Finally, Plaintiffs' inclusion of the phrase "[b]ased on the conduct alleged in this Complaint[]" does nothing to clarify the issue, as it does not specify which facts or "conduct" in the Complaint are relevant to the Count. As reflected in Point 2, § I supra, the alleged breach of confidentiality (assuming this is what Plaintiffs are referring to) can be articulated in materially distinct ways, requiring materially distinct defenses. For example, in Count Three, do

Plaintiffs allege that Neonatal breached its duty of confidentiality by allegedly disclosing the Bill to its attorneys or by authorizing/urging its attorneys to file the Bill with the Court? Do they allege both? Or do they allege breach of a wholly distinct type of duty? It is entirely unclear. Without clarification of the charge, Neonatal cannot intelligently craft a defense thereto.

For these reasons, Count Three should be dismissed.

**III.** **Count Two Must Be Dismissed Because Neonatal is Immunized from CFA Liability By the "Learned Professional" Exemption and Because Plaintiffs Have Failed to Articulate/Identify an "Ascertainable Loss."**

In Count Two, Plaintiffs allege that Neonatal violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., by "publicly disclosing Plaintiffs' confidential and legally protected health information, [which] are acts of consumer fraud to [sic] which Plaintiffs have suffered an ascertainable loss[.]" Complaint at ¶49. Plaintiffs further state that "the conduct of Neonatal has nothing to do with any representation as to their services and is limited to their billing and collection practices. Therefore, no exemption exists as to the application of the . . . Act." Id. at ¶50. Physicians and healthcare-related billing by providers, however, have already been found to fall within the "learned professional" exemption to the CFA in this State and Circuit. Furthermore, Plaintiffs failed to allege that they suffered a cognizable "ascertainable loss" in their Complaint, which is a necessary precondition to bringing a private action under the Act.

**A.** *Neonatal's Medical Billing Falls within the "Learned Professional" Exemption to the CFA*

The "learned professional" exemption was first recognized by the New Jersey Supreme Court in Macedo v. Dello Russo, 178 N.J. 340 (2004). In that case, the court held that advertising activities by physicians fell outside the Act because physicians, like other learned professionals, are "subject to comprehensive regulation by the relevant regulatory bodies and to any common-law remedies that otherwise may apply." Id. at 346. Further, Macedo noted that learned professionals, unlike purveyors of goods or services who fall within the CFA, are "subject to testing, licensing,

regulations, and penalties through other legislative provisions." Id. at 344 (quoting Neveroski v. Blair, 141 N.J. Super. 365, 379 (1976)); see also Hampton Hosp. v. Bresan, 288 N.J. Super. 372, 383 (App. Div.1980) (finding that hospital services fell within the learned professional exemption because "those same services fall within the purview of the Department of Health."). Under this analytical framework, New Jersey courts have found numerous other professions/professional services exempt from the CFA, including nursing home billing and collection practices, Manahawkin Convalescent v. O'Neil, 426 N.J. Super. 143, 155-56 (App. Div. 2012) (aff'd on other grounds 217 N.J. 99 (2014)); insurance brokers, Plemmons v. Blue Chip Ins. Servs, Inc., 387 N.J. Super. 551, 556 (App. Div. 2006); certain hospital services, Hampton Hosp., 288 N.J. Super. at 383; attorneys/attorney billing practices, Vort v. Hollander, 257 N.J. Super. 56, 62 (App. Div.1992); and ambulance service providers/ambulance service provider billing practices, Atlantic Ambulance Corporation v. Cullum, 451 N.J. Super. 247, 266-67 (App. Div. 2017).

Thus, the learned professional exemption to the CFA is one deeply rooted in New Jersey law, and it is clear that this exemption covers physicians and a wide range of physician services/activities, such as physician advertising. See Macedo, 178 N.J. at 346. It is also plain that billing and/or collection practices fall within the scope of professional services exempted from the CFA. See Manahawkin Convalescent, 436 N.J. Super. at 155-56; Vort, 257 N.J.Super. at 62; Atlantic Ambulance, 451 N.J. Super. at 266-67. Indeed, in 2008, the Third Circuit, considering the foregoing law, applied the learned professional exemption to hospital billing practices. See DiCarlo v. St. Mary's Hosp., 530 F.3d 255, 268-69 (3d Cir. 2008).

Here, in light of the above, it is plain that the alleged misconduct here at issue – physician billing and/or collections practices – falls squarely within the learned professional exemption. See Complaint at ¶49-50. For this reason, Count Two should be dismissed in full.

### B.  Plaintiffs Fail to Cite to Any Cognizable "Ascertainable Loss"

"To make out a prima facie case under the CFA, private plaintiffs must present evidence of (1) 'unlawful conduct by defendant,' (2) '*an ascertainable loss by plaintiff*,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss.'" Gupta v. Asha Enterprises, L.L.C., 422 N.J. Super. 136, 147 (App. Div. 2011) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)) (emphasis supplied); see also N.J.S.A. 56:8-19 ("Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction."). In the absence of "ascertainable loss," therefore, a private litigant cannot bring an action under the CFA. "Ascertainable loss[,]" per the plain language of the CFA, is limited to "moneys or property, real or personal[.]" N.J.S.A. 56:8-19. As a corollary, ascertainable loss **does *not*** include non-economic damages. See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 612-13 (1997); Cole v. Laughrey Funeral Home, 376 N.J. Super. 135, 144-45 (App. Div. 2005); Fernandes v. Deutsche Bank National Trust Company, 157 F.Supp.3d 383, FN6 (D.N.J. 2015). Emotional distress and reputational harm are clearly non-economic in nature and therefore do not constitute "ascertainable loss" under the CFA. See Laughrey Funeral Home, 376 N.J. Super. 135 ("The damages sought by plaintiffs here, as outlined in the certifications contained in plaintiffs' . . . brief, *recite how they were emotionally affected by their inability to have an open viewing . . . Those damages constitute non-economic losses that are not recoverable under the CFA.*") (emphasis supplied); Asha Enterprises, LLC, 422 N.J. Super. at 149; Hutchinson v. Delaware Sav. Bank FSB, 410 F.Supp.2d 374, 386 (D.N.J.); Billings v. American Exp. Co., 2011 WL 5599648, at *9 (D.N.J. 2011).

Here, Plaintiffs cite to no ascertainable loss in their Complaint. Instead, consistent with their pleading of other claims, they simply state, in a wholly conclusory fashion, that "publicly disclosing Plaintiffs' confidential and legally protected health information, are acts of consumer fraud to [sic] which Plaintiffs have suffered an ascertainable loss . . ." Complaint at ¶49. Thus, Count Two must fail as a matter of law. Even if, however, this Court were to search the Complaint for evidence of an "ascertainable loss," none would be found, as all of the "injuries" listed therein, "extraordinary worry, anxiety, fear, upset and distress", "humiliation, anxiety, distress, and injury to their reputation", are non-economic in nature. Complaint at 33, 81. Such injuries are not cognizable as "ascertainable loss" under the CFA.

For all of the foregoing reasons, Neonatal respectfully requests that Count Two be dismissed.

**IV.    Count Five Should Be Dismissed Because Plaintiffs Failed to Allege That the Information Disclosed Concerned Matters that a Reasonable Person Would Find Highly Offensive, a Necessary Element In Pleading the Tort of Invasion of Privacy.**

By way of Count Five, Plaintiffs allege that all Defendants have committed the tort of "invasion of privacy"; however, Plaintiffs do not plead a necessary element to that tort, namely, that the disclosure of the private information would be deemed "highly offensive" to a reasonable person. See Complaint at ¶73 – 77.  The term "invasion of privacy" actually refers to four distinct torts under New Jersey law:

> (1) intrusion (e.g., intrusion on plaintiff's physical solitude or seclusion, as by invading his or her home, illegally searching, eavesdropping, or prying into personal affairs); (2) public disclosure of private facts (e.g., making public private information about plaintiff); (3) placing plaintiff in a false light in the public eye (which need not be defamatory, but must be something that would be objectionable to the ordinary reasonable person); and (4) appropriation, for the defendant's benefit, of the plaintiff's name or likeness.

> [Rumbauskas v. Cantor, 138 N.J. 173, 180 (1994).]

Here, only "intrusion upon seclusion" and "public disclosure of private facts" could possibly be applicable to the fact pattern alleged in the Complaint since Plaintiffs allege that the information disclosed is true and Plaintiffs do not allege that Defendants have appropriated Plaintiffs' likeness.

The elements for bringing an action for "intrusion upon seclusion" are the intentional intrusion "'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns' that 'would be ***highly offensive to a reasonable person***.'" G.D. v. Kenny, 205 N.J. 275, 309 (2011) (emphasis supplied) (quoting Bisbeee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982)); see also Castro v. NYT Television, 384 N.J. Super. 601, 608-09 (App. Div. 2006); In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262, 292 (3d Cir. 2016); Dolphin v. Bank of America Mortg. Co., 641 Fed.Appx. 131, 134 (3d Cir. 2016). The tort of public disclosure of private facts also requires a showing – or at least a cognizable allegation – that the disclosure would be deemed "highly offensive to a reasonable person." See McNemar v. Disney Store, Inc., 91 F.3d 610, 622 (3d Cir. 1996) (citing Bisbee, 186 N.J. Super. at 335) ("To state a claim for public disclosure of private facts, a plaintiff must demonstrate (1) that the defendant has given publicity to matters that actually were private, (2) ***that dissemination of such facts would be offensive to a reasonable person***, and (3) that there is no legitimate interest of the public being apprised of the facts publicized.") (emphasis supplied); see also Romaine v. Kallinger, 109 N.J. 282, 292 (1988) ("The invasion of privacy by unreasonable publication of private facts occurs when it is shown that 'the matters revealed were actually private, that dissemination of such facts would be offensive to a reasonable person, and that there is no legitimate interest of the public in being apprised of the facts publicized.'); Castro, 384 N.J. Super. at 610-11). This is because, among other reasons, "[t]he protection of privacy does not extend to the 'hypersensitive person,' the material publicized [to bring an actionable tort for invasion of privacy] ***'must be something that would be***

*objectionable to the ordinary person under the circumstances*."' <u>Romaine</u>, 109 <u>N.J.</u> at 290 (emphasis supplied) (quoting <u>Prosser and Keeton on the Law of Torts</u> § 117).

Nowhere in Plaintiffs' Complaint do Plaintiffs allege that the purported disclosure of private information – or the information itself – was of a kind that would be highly offensive to a reasonable person. <u>See</u>, <u>generally</u>, <u>Complaint</u>. In light of the foregoing legal standards for the relevant invasion of privacy torts, therefore, Plaintiffs have failed to state a claim upon which relief may be granted. Moreover, even if this Court were to find Plaintiffs' occasional conclusory assertion that the disclosure caused Plaintiffs "humiliation, anxiety, distress and injury to their reputation" as evidence of this element, Plaintiffs have pleaded ***zero facts*** to support the contention that such injuries resulted from a disclosure of information that was, in fact, "highly offensive." While Plaintiffs may retort by claiming they could not have pleaded these facts without re-disclosing the offensive information, thereby causing themselves additional injury, this would be untrue – Plaintiffs could easily have filed under seal, <u>see</u> <u>F.R.C.P.</u> 5.2(e); <u>New Jersey Court Rule</u> 4:10-3, and it is curious and telling that they have chosen not to.

Moreover, Plaintiffs have failed to set forth whether the "confidential and legally protected health information" they allege was improperly disclosed was the medical procedure performed (CPT code) or the charges for same. In either event, neither could be considered "highly offensive" to a reasonable person. Further, Plaintiffs would be hard pressed to suggest the disclosure was highly offensive since Plaintiffs themselves posted the information on their social media accounts, including Facebook.  Suffice it to say, should this matter survive this Motion to Dismiss and proceed to discovery, motions for Summary Judgment and/or trial, it will become clear enough that Plaintiffs do not consider the information at issue to be "highly offensive," let alone "confidential."

Because Plaintiffs failed to plead a necessary element to sustain an action for invasion of privacy, this Court should dismiss Count Five.

**V.** **Count Six Must Be Dismissed Because the Collection Action Did Not Terminate Favorably for Plaintiffs, and Because Plaintiffs Failed to Plead a Cognizable "Special Grievance."**

In Count Six, Plaintiffs claim that Defendants' alleged filing of the Collection Action constituted an abuse of process. See Complaint at ¶79 – 81. That this Count was filed at all reflects Plaintiffs' profound misunderstanding of the basic elements of this tort – one of which requires that the "abusive" prior lawsuit terminated favorably for the Plaintiff. But, as Plaintiffs themselves concede (through their incorporation of the public filings of the Collection Action into their Complaint), *they lost* the Collection Action. Separate and apart from this failing, Plaintiffs did not allege that they had suffered a cognizable "special grievance" as a result of the abuse of process, which, like favorable termination of the prior suit, is a necessary precondition to bringing an action for this tort.

To bring an action for abuse of process, a plaintiff must demonstrate that "(1) a [previous] ... action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; ... (4) **the action was terminated favorably to the plaintiff**; ... [and (5)] the plaintiff has suffered a special grievance caused by the institution of the underlying civil claim." Dunne v. Township of Springfield, 500 Fed.Appx. 136 (3d Cir. 2012) (quoting LoBlondo v. Schwartz, 199 N.J. 62, 90 (2009)); see also Skeens v. Shetter, 2006 WL 827782, at* 8 (D.N.J. 2006) (citing Turner v. Wong, 363 N.J. Super. 186, 203 (App. Div. 2003)). "The absence of any one of these elements is fatal." Broem v. Lomazow, 227 N.J. Super. 288 (App. Div. 1988).

Here, *Plaintiffs lost the Collection Action* and, as such, that suit could not have "terminated favorably" for them. This, in and of itself, is sufficient to dismiss this Count. See, e.g.,

Penwag Property Co., Inc. v. Landau, 76 N.J. 595, 598 (1978) (dismissing counterclaim for abuse of process alleging that suit in which counterclaim was filed was an abuse of process because "[f]avorable termination did not exist when defendant's counterclaim was filed in this cause. Though plaintiff had not moved to strike that counterclaim, it should have been eliminated in the pretrial order. It is not appropriate to institute a suit or file a counterclaim until the litigation has terminated in favor of the party who asserts malicious prosecution of the cause of action."). Neonatal asks that this Court dismiss Count Six on this basis.

Additionally, Plaintiffs failed to plead that they suffered a "special grievance" as a result of the Collection Action. A "[s]pecial grievance consists of interference with one's *liberty or property*." Penwag, 76 U.S. at 598 (emphasis supplied; see also LoBlondo, 199 N.J. at 96; Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C., 11 F.3d 385, 389 (3d Cir. 1993). As a result, injuries such as "**mental anguish or emotional distress** . . . are not the special injuries required to sustain a malicious prosecution action and the same is true of the **alleged loss of reputation** which could flow from the mere filing of any complaint." (emphasis added) Lomazow, 227 N.J. Super. at 304; see also Hassoun v. Cimmino, 126 F.Supp.2d 353, 370 (D.N.J. 2000) ("it is clear that attorney's fees and costs in defending the prior action do not constitute a special grievance to support a malicious use of process cause of action. *Also insufficient are allegations of mental anguish or emotional distress from the prior complaints, or statements alleging a loss of reputation, which could flow from the mere filing of any complaint*." (emphasis supplied) (internal quotations omitted); Turner, 363 N.J. Super. at 204-05. Here, the only injuries even alluded to in the Complaint are emotional or reputational. See Complaint at ¶33,81. Such injuries cannot, as a matter of law, constitute the "special grievance" necessary to bring an action for abuse of process. Thus, even if this Court should find that the unfavorable termination of the Collection Action is not an impediment to bringing an abuse of process claim in this case, it should

still dismiss Count Six on the ground that Plaintiffs have failed to plead a cognizable special grievance.

For the foregoing reasons, Neonatal respectfully requests that this Court dismiss Count Six.

## CONCLUSION

For the reasons set forth within, Neonatal respectfully requests that this Court dismiss Count I (breach of doctor-patient privilege), Count II (violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et.seq.), Count III (breach of duty of care), Count V (invasion of privacy) and Count VI (malicious use or process or abuse of process) with prejudice and for such other relief as this Court deems just and proper.

Dated: December 12, 2017

Respectfully submitted,

_____/s/_____
Michelle L. Greenberg, Esq. (MG-3047)
Attorneys for Defendants
Neonatal Associates, LLC.