Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, 2nd Floor
Hackensack, NJ  07601
(201) 273-7117 – TELEPHONE & FAX

Philip D. Stern
Andrew T. Thomasson
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081
Telephone: (973) 379-7500

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS A. RODRIGUEZ-OCASIO AND JOYCE R. LINIS-MOREL, *individually and on behalf of those similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>LAW OFFICES OF JOSEPH A. MOLINARO, L.L.C.; JOSEPH A. MOLINARO; NEONATAL ASSOCIATES, LLC; and JOHN DOES 1 to 10,<br><br>Defendant. | Case No. 2:17-cv-11926-SDW-SCM<br><br><br><br>**AMENDED CLASS ACTION COMPLAINT and JURY DEMAND** |

Plaintiffs, Luis A. Rodriguez-Ocasio and Joyce R. Linis-Morel, individually and on behalf of those similarly situated, by way of this Amended Class Action Complaint against Defendants, Law Offices of Joseph A. Molinaro, L.L.C., Joseph A. Molinaro, and Neonatal Associates, LLC, state:

## I.    NATURE OF THE ACTION

1.      This case finds its genesis in a doctor-patient relationship between the Plaintiffs and Defendant Neonatal Associates, LLC. The Defendants' filing of private and sensitive medical information in state court was an act consistent with a course of conduct and practice which was either designed to, or had as its natural consequence, an attempt to obtain money from consumers and/or their healthcare insurers through the use of false, misleading, deceptive, abusive, unfair, unconscionable, and unlawful statements and conduct prohibited by common law and statutory law including, but not limited to, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.

2.      Plaintiffs bring this class action for damages against Defendants arising from Defendants' unlawful disclosure of, to the public, sensitive and confidential personal identifying and medical information, when attempting to collect debts from New Jersey consumers.

## II.    JURISDICTION AND VENUE

3.      Jurisdiction of this Court arises based on Defendants having removed this action from the Superior Court of New Jersey.

## III.    PARTIES

4.      Plaintiff Luis A. Rodriguez-Ocasio ("Rodriguez-Ocasio") is a natural person residing in Passaic County, New Jersey.

5.      Plaintiff Joyce R. Linis-Morel ("Linis-Morel") is a natural person residing in Passaic County, New Jersey.

6.      Defendant, Law Offices of Joseph A. Molinaro, L.L.C. ("Molinaro Collection Firm"), is a collection law firm with an office located at 648 Wyckoff Avenue, Wyckoff, New Jersey 07481.

7.      Defendant, Joseph A. Molinaro ("Molinaro"), is a principal attorney and managing member of the Molinaro Collection Firm. On information and belief, Molinaro is the sole member of and sole attorney at the Molinaro Collection Firm.

8.      In this pleading, the "Debt Collector Defendants" refers to Defendants Molinaro Collection Firm and Molinaro.

9.      Defendant, Neonatal Associates, LLC ("Neonatal"), is a limited liability company formed under the laws of the State of New Jersey and is primarily engaged in the practice of medicine.

10.     On information and belief, Neonatal's principal office is located at 703 Main Street, Suite A2418, Paterson, New Jersey 07503.

11.     Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by Neonatal and/or the Molinaro Collection Firm that are the subject of this Complaint. Those Defendants personally controlled the illegal acts, policies, and practices utilized by Neonatal and/or the Molinaro Collection Firm and, therefore, are personally liable for the wrongdoing alleged in this Complaint.

### IV.     ALLEGATIONS APPLICABLE TO ALL COUNTS

12.     Each of the specific acts alleged herein is alleged to be consistent with the Defendants' practices when attempting to collect money allegedly owed for the services of a physician specializing in neonatology, a subspecialty of pediatrics concerning the medical care of newborn infants especially the ill or premature newborn.

13.     Neonatologists consult with expectant mothers, are present during high-risk deliveries, and provide care to newborns.

14.     On information and belief, high-risk infants at St. Joseph's University Medical Center in Paterson, New Jersey, are cared for by neonatologists who are members of, employed by, or supplied by Defendant Neonatal.

15.     On information and belief, those neonatologists are certified in the specialty of pediatrics and sub-specialty of neonatal-perinatal medicine by either the American Board of Pediatrics or the American Osteopathic Board of Pediatrics.

16.     This case, however, is not about the professional services rendered by Neonatal's neonatologists. Instead, this case is about the collaborative billing and collection practices of Neonatal and its debt collection attorney which, despite the confidential and sensitive nature of Neonatal's services, unnecessarily discloses the names of their newborn patients and HIPAA-protected health information about their treatment when applying for default judgments or summary judgment, but cavalierly proclaims the unfettered right to do so in the name of collection despite such information being unnecessary to obtaining such judgments. Indeed, after being confronted with disclosing details of the treatment for nearly 200 patients, neither Neonatal nor its attorney (the Debt Collector Defendants) expressed any interest in correcting or addressing their widespread breach of confidentiality.

17.     Upon review by Plaintiffs' counsel of nearly 200 collection cases commenced in the Superior Court of New Jersey by Neonatal when represented by the Debt Collection Defendants, Neonatal signed affidavits[1]—most signed by its President, Adel Zauk, M.D., and the

---

[1] Technically, certifications in lieu of oath which are treated by the court in which they were filed the same as it would treat an affidavit. *See,* New Jersey Court Rule 1:4-4(b).

rest by Neonatal's duly authorized agent and collections manager, Wayne Chrebet—for the purpose of being filed in that court in support of applications resulting in judgments in favor of Neonatal. No case involved any disputed issue as to the services rendered including what medical services were performed. Consequently, in no case was there ever any necessity to disclose what the HIPAA Privacy Rule deems to be "protected health information" or PHI.

18.    The HIPAA Privacy Rule, while allowing disclosure of the minimum necessary information to business associates and courts under specified conditions, none of those conditions existed with respect to any of those cases.

19.    Yet, in every case, Neonatal's affidavit attached its own Statement without redacting the name of its infant patient and disclosing each patient's PHI including a description of the services rendered and the standardized code for such services.

20.    Neonatal signed those affidavits and attached those Statements knowing they would be filed with the court and become public records.

21.    The Debt Collector Defendants regularly collect or attempt to collect past-due medical debts from patients or, in the case of patients who are minors, from their parents or legal guardians. The banner header on Debt Collector Defendants' website, www.molinarolaw.com (accessed May 14, 2018) reads, "New Jersey Debt Collection Attorney."

22.    Molinaro is licensed to practice law in the State of New Jersey and, in that regard, is, on information and belief, the sole member of the Molinaro Collection Firm.

23.    According the Debt Collector Defendants' website, www.molinarolaw.com (accessed May 14, 2018), "Unlike larger creditors' rights firms, where your information is simply keyed in by data entry clerks, Mr. Molinaro personally reviews, analyzes, investigates and makes recommendations upon each claim presented."

24.     Thus, on information and belief, Molinaro personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and oversaw all the illegal policies and procedures used by himself and other employees of the Molinaro Collection Firm complained of herein.

25.     Molinaro, on behalf of the Molinaro Collection Firm and Neonatal, drafted and/or approved the form and the language of, and filed with the Superior Court of New Jersey, the Neonatal affidavits which disclosed the names of infant patients and PHI.

26.     What happened in the case of the Plaintiffs is but one example of Defendants' offensive practice of unlawfully disclosing confidential and legally protected health information all in the name of collecting a debt.

27.     Defendants alleged Plaintiffs incurred or owed a certain financial obligation ("Debt") which is alleged to having arose from services provided by a Neonatal physician to Plaintiffs and their infant child.

28.     Defendants contend that the Debt is past-due and in default and was in that state when it was assigned, placed, or transferred to the Debt Collector Defendants for collection.

29.     Based on their physician-patient relationship, Neonatal was obliged to keep confidential certain information regarding Plaintiffs and their infant child including, but not limited to, the "Publicized Information" described below, except under certain conditions which do not exist with respect to the Plaintiffs or any member of the class Plaintiffs seek to represent.

30.     Based on HIPAA's Privacy Rule, Neonatal was obligated to not publicly disclose PHI including, but not limited to, the "Publicized Information" described below, except under certain conditions which do not exist with respect to the Plaintiffs or any member of the class Plaintiffs seek to represent.

31.     Neonatal is a "health care provider" as defined by 45 C.F.R. § 160.103.

32.     On information and belief, at all times relevant to Plaintiffs' claims, Neonatal's records include information which Neonatal receives and creates relating to (a) the past, present, or future physical or mental health or condition of an individual, (b) the provision of health care to an individual, and (c) the past, present, or future payment of the provision of health care to an individual.

33.     Such information is "health information" as defined by 45 C.F.R. § 160.103.

34.     To the extent such health information identifies the individual to whom it relates or there is a reasonable basis to believe the information can be used to identify the individual, the information is "individually identifiable health information" as defined by 45 C.F.R. § 160.103,

35.     Such individually identifiable health information is PHI as defined by 45 C.F.R. § 160.103 to the extent the information is transmitted or maintained in electronic media or is transmitted or maintained in any other form or medium, unless one of four exceptions apply (but no exceptions apply here to the Publicized Information described below).

36.     On information and belief, the PHI disclosed in the Neonatal affidavits is maintained in electronic media and is transmitted in electronic media.

37.     On information and belief, Neonatal transmits PHI health information in electronic form in connection with the transmission of information between two parties to carry out financial activities related to the health care which Neonatal provides. Such transmissions are "transactions" as defined by 45 C.F.R. § 160.103.

38.     Neonatal is a "covered entity" as defined by 45 C.F.R. § 160.103.

39.     HIPAA's Privacy Rule prohibits Neonatal, as a covered entity, from using or disclosing PHI except as permitted or as required under specified regulations. 45 C.F.R.

§ 164.502(a). None of those regulations permit or required the disclosure of the Publicized

Information as described below.

40.     In an attempt to collect the Debt, Defendants filed a complaint on August 19,

2016 in the Superior Court of New Jersey thereby commencing action ("Collection Action") in

that Court entitled *Neonatal Associates, LLC v. Linis et al.*, and designated in that court by

Docket No. PAS-DC-7057-16.

41.     Plaintiffs did not file an Answer in the Collection Action.

42.     On October 3, 2016, in an attempt to collect the Debt, Defendants filed a

document titled Certification of Proof and Nonmilitary Service (the "COP") in the Collection

Action.

43.     The COP was in a form acceptable to the Superior Court of New Jersey in lieu of

an affidavit. See, New Jersey Court Rule 1:4-4(b).

44.     On information and belief based on a reasonable reading of the COP, the COP

was signed by Neonatal.

45.     On information and belief based on a reasonable reading of the COP, the COP

was made by Wayne Chebret.

46.     On information and belief, the correct spelling of the maker of the COP is Wayne

Chrebet.

47.     On information and belief based on a reasonable reading of the COP, Wayne

Chebret a/k/a Wayne Chrebet made the COP as Neonatal's collection manager.

48.     On information and belief based on a reasonable reading of the COP, Wayne

Chebret a/k/a Wayne Chrebet made the COP as Neonatal's agent.

49.     On information and belief based on a reasonable reading of the COP, the making of the COP by Wayne Chebret a/k/a Wayne Chrebet was duly authorized by Neonatal.

50.     On information and belief based on the filing of the COP and a reasonable reading of the docket in the Collection Action, the Debt Collector Defendants filed the COP for purpose of obtaining a default judgment against Plaintiffs.

51.     On information and belief based on the filing of the COP and a reasonable reading of the docket in the Collection Action, the Debt Collector Defendants filed the COP at the direction or insistence of Neonatal or Neonatal's authorized agent.

52.     On information and belief based on the filing of the COP and a reasonable reading of the docket in the Collection Action, the Debt Collector Defendants filed the COP as Neonatal's authorized agents.

53.     On information and belief based on a reasonable reading of the COP filed in the Collection Action and similar Certifications of Proof filed in other collection actions brought by Neonatal and the Debt Collector Defendants, Neonatal actively participated in the making of the COP for the purpose of obtaining a default judgment.

54.     Attached to, made a part of, and referenced in the COP is a single-page document which appears to be titled (and is referred to in this Amended Complaint as) "Statement."

55.     The Statement was created by Neonatal or by Neonatal's authorization given to its agent (which may have been Wayne Chrebet).

56.     The Statement attached to the COP which Defendants filed in the Superior Court of New Jersey as part of that court's public records included the full account number, the name of Plaintiffs' minor child as the patient, dates of services, medical procedure or insurance codes,

and a description of medical services (the foregoing information being referred to as the "Publicized Information").

57.    A true copy of the COP is attached as **Exhibit A** except that counsel for Plaintiffs have redacted from the Statement the Publicized Information.

58.    Defendants knowingly filed the COP with the unredacted Statement in support of Neonatal's application for the entry of default judgment against Plaintiffs in the Collection Action.

59.    On information and belief based on the filing of the COP and a reasonable reading of the docket in the Collection Action, each Defendant participated in making, signing, authorizing ,and filing the COP for the purpose of obtaining default judgment in favor of Neonatal in the Collection Action.

60.    The Statement's inclusion of the Publicized Information was not required for Neonatal to obtain a default judgment in the Collection Action or for any other lawful purpose.

61.    The Publicized Information includes health information, individually identifiable health information, and protected health information as those terms are defined by 45 C.F.R. § 160.103.

62.    The Publicized Information identified specific individuals or provides a reasonable basis to believe the information can used to identify specific individuals; specifically, the Publicized Information identified each Plaintiff by name and address, and identified Plaintiffs' infant child by name, and includes a description of health care.

63.    Defendants, individually and through their joint efforts, intentionally disclosed private facts about Plaintiffs and their minor child to the general public without any lawful or justifiable purpose.

64.     On information and belief, Neonatal (either itself or through its authorized agent) knowingly and voluntarily gave the Publicized Information to the Debt Collector Defendants when Neonatal knew or reasonably should have known such information was not necessary to the services Neonatal sought the Debt Collector Defendants to perform on Neonatal's behalf.

65.     On information and belief, Neonatal (either itself or through its authorized agent) knowingly and voluntarily gave the Publicized Information to the Debt Collector Defendants for the purpose of filing with the court knowing the Publicized Information would thereby become accessible to the public.

66.     Defendants acted together to place the Publicized Information into the court records knowing it would thereby become accessible to the public under the guise of obtaining a default judgment when, in fact, the Publicized Information had no relevance to whether default judgment would be entered.

67.     After being informed of the public disclosure of the Publicized Information, neither Neonatal nor the Debt Collection Defendants undertook any action to seal that information or to otherwise render it inaccessible to the public.

68.     Plaintiffs then incurred the expense of seeking to seal the Publicized Information by filing a motion in the Collection Action but Neonatal objected to the court sealing the Statement if doing so would require the court to find (1) the default judgment was based, in part, on the COP made by Wayne Chebret as the authorized Collections Manager and agent of Neonatal, or (2) the Statement contains information unnecessary to the entry of default judgment including the full name of a minor and private health information protected from disclosure under HIPAA. Consequently, on May 11, 2018, the court denied the motion without prejudice because it could not find—as is necessary to seal court records—a clearly defined or serious

injury sufficient to seal presumptively public records although the court noted Plaintiffs may have claims against Neonatal where the standard for relief is different from that for sealing court records.

69.     As a direct, proximate and legal cause of Defendants' conduct, Plaintiffs have suffered and continue to suffer damages.

70.     The confidential and legally protected health information exposed to the public by Defendants has the potential to cause harm to Plaintiffs and their infant child.

71.     On information and belief based on a review of the dockets in 187 cases commenced in the Superior Court of New Jersey against other New Jersey residents by Neonatal, it is Neonatal's practice to make and sign certifications in lieu of affidavit in which Neonatal places into the court's public records health information (including descriptions of medical procedures) which can be identified to specific individuals.

72.     Such certifications include more than one hundred which appear to be personally signed by Dr. Adel Zauk, M.D. who, on information and belief, is the President of Neonatal.

73.     Plaintiffs' counsel is informed and, on that basis, Plaintiffs allege that Dr. Zauk has denied signing any of those certifications however neither Dr. Zauk nor Neonatal has disavowed that the signature which appears on those certifications were made without Dr. Zauk's or Neonatal's authorization, and Neonatal continues to reap the benefits of the default judgments obtained based on those certifications. Consequently, to the extent such signatures were neither made by Dr. Zauk or authorized by Dr. Zauk or Neonatal, Neonatal has ratified them as Dr. Zauk's signature.

74.     Neonatal and the Debt Collector Defendants could have easily taken measures to prevent the publication of the Publicized Information with little or no added time or expense.

75.     Defendants used the same procedures described above in their attempts to collect debts from numerous other New Jersey consumers.

### V.     FIRST CAUSE OF ACTION AGAINST NEONATAL: BREACH OF THE DOCTOR-PATIENT PRIVILEGE

76.     Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

77.     The Publicized Information includes information obtained from the physician-patient relationship between Plaintiffs (including their infant child) and Neonatal's physician. Such information included patient communications, patient records, as well as the associated hospital records.

78.     By virtue of that physician-patient relationship, Neonatal owed Plaintiffs and Plaintiffs' infant child a legal duty to maintain the confidentiality of the Publicized Information.

79.     That legal duty, which arises under state law, has been recognized as creating a privacy right which warrants constitutional protection. *See, Estate of Behringer v. Med. Ctr. at Princeton*, 249 N.J. Super. 597, 632 (Law. Div. 1991); *also*, *Stempler v. Speidell*, 100 N.J. 368 (1985).

80.     No exception exists which permits the disclosure of the Publicized Information when, as here, that information was not necessary to obtaining default judgment in the Collection Action.

81.     By authorizing, making, signing, and filing the COP which contained the Publicized Information, Neonatal breached that duty causing Plaintiffs damages.

### VI.     SECOND CAUSE OF ACTION AGAINST NEONATAL: BREACH OF THE DUTY OF CARE

82.     Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

83.     Neonatal owed Plaintiffs a duty of care to keep the Publicized Information confidential.

84.     To the extent Publicized Information was disclosed due to Neonatal's failure to exercise due care, the publication of the Publicized Information was caused by Neonatal's negligence which caused Plaintiffs' damages.

**VII.    THIRD CAUSE OF ACTION AGAINST DEBT COLLECTOR DEFENDANTS: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

85.     Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

86.     By way of background as to Plaintiffs' claim for violations of the FDCPA, Plaintiffs assert:

a.   The FDCPA regulates the behavior of Debt Collector Defendants attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many Debt Collector Defendants, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. 15 U.S.C. §§ 1692(a) & 1692(b). Consequently, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by Debt Collector Defendants, and to insure that those Debt Collector Defendants who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (internal quotes omitted); 15 U.S.C. § 1692(e).

b.  The Act is not concerned with whether the consumer owes the debt, rather, "[a] basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve the right to be treated in a reasonable and civil manner." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007) (internal citations omitted).

c.  "Congress also intended the FDCPA to be self-enforcing by private attorney generals." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004).

d.  The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455.

e.  "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

f.  Furthermore, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

g.  Except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

h.  To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8). Included among the *per se* violations prohibited in this section is the disclosure of personal identifying information when communicating by mail, 15 U.S.C. § 1692f(8); *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 306 (3d Cir. 2014) ("we find the statute not only proscribes potentially harassing and embarrassing language, but also protects consumers' identifying information.").

i.  A debt collector who violates any provision of the FDCPA is liable for "additional damages" (also called "statutory damages") up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). The absence of actual damages is not a bar to such actions as "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury

would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n3 (1973). Indeed, Congress, through "the FDCPA[,] permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobson, supra,* 516 F.3d at 96 (emphasis added).

j.  The FDCPA also provides for class relief "capped" at the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA." *Weiss, supra,* 385 F.3d at 345. Indeed, while limiting class relief, Congress nevertheless recognized the effectiveness of class actions to enforce the FDCPA and, therefore, mandated that a class action should be maintained "without regard to a minimum individual recovery." *Id.* When a debt collector opposes class certification based on its minimal or negative net worth, "there is a chance that no claims would proceed against Defendants due to a lack of financial incentive, thereby leaving unpunished allegedly thousands of FDCPA violations. This is exactly the kind of result Congress intended to avoid through the creation of the class action form." *Barkouras v. Hecker*, 2006 WL 3544585, 2006 U.S. Dist. Lexis 88998 (D.N.J. Dec. 8, 2006).

87.  Molinaro is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

88.  Molinaro Collection Firm is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

89.  On information and belief, Molinaro personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and

oversaw all of the illegal policies and procedures used by himself and other employees of Molinaro Collection Firm complained of herein.

90.     The Debt is a "debt" as defined by 15 U.S.C. § 1692a(5).

91.     Each Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

92.     The COP with the unredacted Statement was placed into the public domain in the Debt Collector Defendants' attempt to collect the Debt.

93.     The Debt Collector Defendants, both individually and jointly, violated the FDCPA in at least one of the following ways:

(a)     Disclosing the Publicized Information in connection with the collection of the Debt has the natural consequence to harass, oppress, or abuse Plaintiffs in violation of 15 U.S.C. § 1692d;

(b)     Including the Publicized Information in the COP falsely implied, in connection with the collection of the Debt, such information was relevant or necessary to an application for default judgment in violation of 15 U.S.C. § 1692e; and

(c)     Disclosing the Publicized Information constituted an unfair or unconscionable means to collect or attempt to collect the Debt in violation of 15 U.S.C. § 1692f.

94.     As a direct, proximate and legal cause of the Debt Collector Defendants' violation of the FDCPA, Plaintiffs have suffered and will continue to suffer actual damages.

**VIII.    FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS: INVASION OF PRIVACY**

95.     Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

96.     The Publicized Information is private information subject to confidentiality as a matter of law. Under federal law, *see* 45 C.F.R. § 164.502(a) (HIPAA's Privacy Rule which, while subject to exceptions, no exceptions exist here and, if there were any exceptions, they

would subject to the Minimum Necessary Standard, 45 C.F.R.§ 164.502(b)(1), which would prohibit disclosure of the Publicized Information because that information was not necessary to Neonatal obtaining a default judgment); and, under New Jersey state law, *see, Estate of Behringer v. Med. Ctr. at Princeton*, 249 N.J. Super. 597, 632 (Law. Div. 1991) and *Stempler v. Speidell*, 100 N.J. 368 (1985).

97.    The Publicized Information would be offensive to a reasonable person of ordinary sensibilities. While the birth of child is typically a celebrated and joyous occasion, the information described the medical services provided during childbirth is generally accepted to be private and confidential. Consequently, a reasonable person of ordinary sensibilities would find it offensive to discover a description of such services identified to the infant and the infant's parents, was placed by the treating physician into the public domain without there being any necessity or justification for the disclosure. Such a person would find it highly offensive if the disclosed description could be reasonably (even if mistakably) understood by reasonable people to imply negative or embarrassing health issues which happened during the birth of Plaintiffs' child.

98.    Defendants willfully and maliciously invaded Plaintiffs' right to privacy causing them damages.

## IX.    CLASS ACTION ALLEGATIONS

99.    Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

100.    Plaintiffs bring this action individually and as a class action on behalf of all others similarly situated.

101.    Subject to discovery and further investigation which may require Plaintiffs to modify the following class definition at the time Plaintiffs move for class certification, Plaintiffs seek certification of a Class initially defined as follows:

> All natural persons named as a defendant in a lawsuit commenced in the Superior Court of New Jersey in which Neonatal Associates, LLC was the plaintiff and was represented by Law Offices of Joseph A. Molinaro, L.L.C. and, during the Class Period, a certification in lieu of affidavit was filed in support of an application for default judgment or a motion for summary judgment which attached one or more documents naming of the infant patient, the medical procedure or insurance codes, or a description of medical services or procedures.

102.    With respect to the claims arising under the FDCPA, the Class Period begins on October 4, 2016 and, with respect to all other claims, the Class Period begins on October 4, 2011. The Class Period ends on the date the class is certified.

103.    The identities of all class members are readily ascertainable from the Defendants' records.

104.    This action has been brought, and may properly be maintained, as a class action because there is a well-defined community interest in the litigation based on:

a.    **Numerosity:** Plaintiffs are informed and believe, and on that basis allege, that the Class defined above is so numerous that joinder of all members would be impractical and, specifically, there are at least 40 members of the Class.

b.    **Common Questions Predominate:** Common questions of law and fact exist as to the members of the Class and those questions predominate over any questions or issues involving only individual class members. The principal issues include:

        i.   whether the Defendants' applications for default judgments unlawfully disclosed information Neonatal was legally obligated to keep confidential; and

      ii.   whether the disclosure of such information in applications for default judgment by the Debt Collector Defendants violated the FDCPA.

c.  **Typicality:** Plaintiffs' claims are typical of the claims of all members of the Class. Plaintiffs and all members of the Class have claims arising out of the Defendants' common uniform course of conduct complained of herein.

d.  **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the members of the Class insofar as Plaintiffs have no interests that are averse to the absent class members. Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither Plaintiffs nor their counsel has any interests which might cause them not to vigorously pursue the instant class action lawsuit.

e.  **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members of the Class would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. An important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and the potential inconsistent or contradictory adjudications will be avoided.

105.    This action may be maintained as a "B1a-class", a "B2-class", a "B3-class", or a hybrid of any two or all three types however, at the time of filing this pleading, Plaintiffs expect to seek certification as a B3-class because:

a. the questions of law and fact common to members of the Class appear to predominate over any questions affecting an individual member, and

b. a class action would be superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

106.    Depending on information obtained through further investigation and discovery, Plaintiffs move for class certification using a different class definition, a different class period, or different class claims, any of which will be more or less inclusive than the definitions set forth herein but based on the same practices alleged herein. In addition, Plaintiffs may seek to maintain a class action only with respect to particular issues.

## X.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against the Defendants, jointly and severally, as follows:

a. An order certifying that this action may proceed as a class action with respect to the Class and appointing Plaintiffs and the undersigned counsel to represent the Class;

b. An award of statutory damages against the Debt Collector Defendants pursuant to 15 U.S.C. § 1692k(a)(2);

c. An award of attorneys' fees against the Debt Collector Defendants pursuant to 15 U.S.C. § 1692k(a)(3);

d. An award against all Defendants found to have liability, jointly and severally, for all damages (including actual, compensatory, and exemplary damages) both individually and such damages incurred by the members of the class which are capable of determination without an individual inquiry;

e. Against Neonatal for equitable relief including but not limited to a permanent injunction; and

f. For such other and further relief as may be just and proper.

## XI.    JURY DEMAND

Plaintiffs demand a trial by jury on all issues subject to trial by jury.

*s/Philip D. Stern*

Dated: May 14, 2018                                 Philip D. Stern

Philip D. Stern
Andrew T. Thomasson
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081
Telephone: (973) 379-7500

Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, 2nd Floor
Hackensack, NJ  07601
(201) 273-7117 – TELEPHONE & FAX

*Attorneys for Plaintiffs*

## XII.     CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated except: None.

I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

*s/Philip D. Stern*
_____
Philip D. Stern

Dated: May 14, 2018